## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-CR-139-JFH** |
| **JEFFREY SCOTT SMITH, JR.,** | |
| **Defendant.** | |

### <u>OPINION AND ORDER</u>

Before the Court are motions in limine filed by Defendant Jeffrey Scott Smith, Jr. ("Defendant") [Dkt. No. 44] and the United States of America ("Government") [Dkt. No. 45]. Defendant filed a response in opposition to the Government's motion in limine [Dkt. No. 51] and the Government filed a response in opposition to Defendant's motion in limine [Dkt. Nos. 47]. After seeking leave from the Court, the Government also filed a reply brief. Dkt. No. 54. The Court will address both parties' motions in limine herein.

### BACKGROUND

#### I.    Procedural Background

On August 9, 2023, Defendant was charged by indictment with three counts:  one count of Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. §§ 242 and 250(b)(3) and two counts of Falsification of Records, in violation of 18 U.S.C. § 1519.  Dkt. No. 2.  A superseding indictment was filed on September 13, 2023 to correct a typographical error in the original indictment.  Dkt. No. 29.  This case is currently set for trial on the Court's March 4, 2024 docket. Dkt. No. 41.

## II.    Charged Conduct[1]

On November 2, 2022, while working his first solo shift as a police officer with the Savanna Police Department ("SPD"), Defendant pulled over a vehicle for speeding around 4:50 a.m.  Dkt. No. 45 at 7.  Defendant had just graduated from the Council on Law Enforcement Education and Training Academy ("CLEET") five (5) days prior and had been employed by SPD for a little over four (4) months at the time of the stop.  *Id*.  The vehicle that Defendant pulled over was driven by J.G.  *Id*.  J.G.'s then-girlfriend, K.H., was in the passenger seat of J.G.'s car.  *Id*.

After initiating the traffic stop, Defendant ran both J.G. and K.H.'s drivers licenses and determined that J.G.'s license was expired.  Dkt. No. 45 at 8.  Defendant instructed J.G. and K.H. to switch positions in the vehicle, moving K.H. to the driver's seat.  Defendant issued J.G. a speeding ticket and then began asking J.G. and K.H. personal questions, including questions about their relationship.  *Id*.  At 5:08 a.m., while still speaking with J.G. and K.H., Defendant manually deactivated his SPD-issued body worn camera.  *Id*.  Defendant then asked K.H. what she did for work, to which she responded that she worked as a dancer at a club in Tulsa, Oklahoma.  Dkt. No. 45 at 8.  Defendant then asked to search J.G.'s car.  *Id*.  J.G. initially declined, but then consented to the search after Defendant informed him that he would have to wait for a K9 unit to arrive if he did not consent.  *Id*.  During the search, Defendant found a pre-rolled marijuana cigarette in K.H.'s purse.  *Id*.  Shortly thereafter, at 5:16 a.m., Defendant walked back to his patrol car and deactivated the dashboard camera.  Dkt. No. 45 at 8.  Although the dashboard camera was deactivated, a record-

---

[1]  The Court understands that Defendant disputes the facts as recited by the Government.  Dkt. No. 51 at 3.  However, for purposes of the current motions only, the Court accepts the Government's recitation of the facts except where noted to include additions or differences stated in Defendant's briefing.

after-the-fact feature on the dashboard camera remained active and continued recording a buffered soundless video. *Id*.

Defendant then instructed J.G. to remain in the front passenger seat of J.G.'s vehicle and ordered K.H. to get into the front passenger seat of Defendant's patrol car. *Id*. K.H. alleges that once they were in the patrol car, Defendant began asking her "inappropriate questions about her work as a dancer." *Id*. K.H. alleges that Defendant then twisted the pre-rolled marijuana cigarette he had confiscated from K.H.'s purse in his hand and told K.H. that he was trying to figure out what he was going to do with her. Dkt. No. 45 at 9. Defendant then leaned over and kissed K.H., sticking his tongue inside her mouth, and began touching her breasts over her clothes and pulling her hand on top of his erect penis over his clothes. *Id*. K.H. alleges that Defendant then reached into her sweatpants, inside her underwear, and penetrated her vagina with his finger. *Id*. Defendant then asked K.H. to perform oral sex on him. *Id*. After repeatedly refusing, Defendant stopped touching K.H., handed her the pre-rolled marijuana cigarette, and told her to get rid of it. Dkt. No. 45 at 9-10. K.H. then left Defendant's patrol car and got back in the driver's seat of J.G.'s vehicle. *Id*. at 10. The dashboard camera indicates that K.H. returned to J.G.'s vehicle at 5:33 a.m. after being in Defendant's patrol car for approximately seventeen (17) minutes. *Id*.

When K.H. got inside J.G.'s vehicle, she immediately told J.G. that Defendant had just sexually assaulted her. *Id*. K.H. was crying, yelling, and visibly upset. Dkt. No. 45 at 10. J.G. then got out of the vehicle and attempted to record Defendant with his cellphone, but Defendant drove away in his patrol car. *Id*. J.G. got back in the vehicle and K.H. began to drive away from the scene, but had to pull over because she was crying hysterically. *Id*. At 5:45 a.m., K.H. called her mother, J.H., and J.H. put the call on speaker phone. *Id*. During the phone call, K.H. was crying and screaming and told J.H. that she was sexually assaulted by a police officer. Dkt. No.

45 at 10.  K.H.'s older sister, P.H., who was at J.H's house at the time of the phone call, also heard K.H. over the speaker phone crying and hysterical.  *Id*.  P.H. spoke with K.H. about what happened and then reported the sexual assault to the Pittsburgh County Sheriff's Office on K.H.'s behalf.  *Id*.

Later that same day, K.H. disclosed the sexual assault to her twin sister, E.H.  Dkt. No. 45 at 11.  The next day, K.H. and J.G. gave recorded statements about the sexual assault to Oklahoma State Bureau of Investigation ("OSBI") agents.  *Id*.  Approximately three (3) months later, K.H. gave another detailed statement about the sexual assault to the Federal Bureau of Investigation ("FBI").  *Id*.

## ARGUMENT AND AUTHORITIES

### I.   Motion in Limine Standard

"The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Mendelsohn v. Sprint/United Management Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 Fed.App'x 337 (10th Cir. 2010) (quotation and citation omitted).  In many instances, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context.  *Id*.  A court will generally not grant a motion in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible on *all* potential grounds."  *Tulsa Zoo Management, Inc. v. Peckham Guyton Albers & Viets, Inc.*, No. 17-CV-644, 2019 WL 1562147, at *1 (N.D. Okla. Mar. 5, 2019) (citation and quotation omitted).

II.     **Defendant's Omnibus Motion in Limine [Dkt. No. 44]**

      *a.  Testimony of current Savanna Police Department Chief, M.H.*

Defendant seeks to preclude the Government from introducing the testimony of M.H., SPD Chief of Police.  Dkt. No. 44 at 3.  First, Defendant argues that M.H.'s testimony is irrelevant, unduly prejudicial, and constitutes improper opinion testimony.  *Id.*  Specifically, Defendant argues that M.H.'s testimony is irrelevant because he was not Chief of Police at the time SPD hired Defendant.  *Id.* at 3-4.  The Government argues that whether M.H. was SPD Chief of Police is of no consequence and, regardless, M.H. was Chief of Police at the time of the charged conduct.  Dkt. No. 47 at 5-6.

The Government's response makes clear that M.H. will testify as to his knowledge about the relevant facts.  The Court agrees with the Government that whether or not M.H. was Chief of Police at the time Defendant was hired by SPD is inconsequential in determining whether M.H.'s testimony is admissible and does not make M.H.'s testimony any less probative.  This argument plainly fails.

Next, Defendant seeks to preclude the Government from eliciting testimony from M.H. that he placed Defendant on administrative leave, took possession of his SPD-issued firearm, badge, and patrol car, and notified CLEET of Defendant's termination from SPD following the charged conduct.  Dkt. No. 44 at 4-5.  The Government states that it does not intend to present evidence that M.H. placed Defendant on administrative leave, took possession of his SPD-issued firearm and badge, and notified CLEET of Defendant's termination from SPD following the charged conduct.  Dkt. No. 47 at 6.  However, the Government reserves the right to introduce this evidence should Defendant open the door by suggesting that SPD or other law enforcement agencies "did not take these allegations seriously or believe they merited consequences."  *Id.* at 7.

Additionally, the Government notes that it may be necessary for the Government to introduce evidence regarding the steps taken to secure Defendants' patrol car for purposes of establishing a chain of custody for the body worn camera and dashboard camera footage.  *Id*.

Because the Government does not intend to introduce evidence that M.H. placed Defendant on administrative leave, took possession of his SPD-issued firearm and badge, and notified CLEET of Defendant's termination from SPD following the charged conduct, Defendant's motion in limine is denied as moot as to this issue.  Further, the Court finds that evidence regarding steps taken to secure Defendant's patrol car in order to preserve the body worn camera and dashboard camera footage is admissible for the limited purpose of establishing a chain of custody.  The Government is further instructed that should it believe that Defendant has opened the door to the introduction of this evidence at trial, it shall notify the Court outside the presence of the jury so that the Court may fully address this issue at that time.

Finally, Defendant seeks to preclude testimony from M.H., or other law enforcement officers, regarding Defendant's intent at the time of the charged conduct.  Dkt. No. 44 at 4.  Specifically, Defendant argues that testimony that an officer would only turn off their body worn and dashboard cameras midway through an interaction with civilians if they had the intention to cover up misconduct after the body worn and dashboard cameras were turned off is impermissible.  *Id*.  Defendant further argues that any lay witness testimony regarding intent goes directly to Defendant's state of mind and is an ultimate issue to be decided by the trier of fact.  *Id*.

The Government does not object "[t]o the extent that [D]efendant is seeking to prohibit any witness from testifying to an ultimate opinion of his mental state."  Dkt. No. 47 at 1.  However, the Government argues that evidence that Defendant failed to comply with SPD policies and acted contrary to his training is relevant to the jury's determination as to whether Defendant acted with

the requisite specific intent.  *Id.* at 7 (citing *United States v. Brown*, 654 F. App'x 896, 910 (10th Cir. 2016), *United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015)).

The Federal Rules of Evidence do not categorically prohibit lay witnesses from offering opinion testimony regarding a defendant's mental state.  See *United State v. Goodman*, 633 F.3d 963, 968 (10th Cir. 2011).  Lay witnesses may testify in the form of opinions or inferences given the following limitations:  (1) it is "rationally based on the perception of the witness," (2) it is "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue," and (3) it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  *Id.* (citing Fed. R. Evid. 701).  Fed. R. Evid. 704(a) "further provides that opinions and inferences 'otherwise admissible' are 'not objectionable' because they embrace 'an ultimate issue to be decided by the trier of fact.'"  *Id.* (citing Fed. R. Evid. 704(a)).

Because M.H. and other SPD officers did not observe or perceive Defendant's behavior at the time of the charged conduct, they cannot testify as to Defendant's mental state at the time of the charged conduct.  However, they may testify regarding SPD policies, as well as Defendant's field and CLEET training, and testify whether turning off body worn and dashboard cameras midway through an interaction with civilians is consistent with or contrary to such policies and training.  The Court agrees with the Government that this evidence is relevant to show that Defendant acted knowingly and willfully as charged under the statutes.  Therefore, Defendant's motion in limine is denied as to this issue.

   b.  *Reference to K.H. as "victim."*

Defendant seeks to preclude the Government from referring to K.H. as the "victim" during trial, consistent with this Court's ruling in *United States v. McGirt*, 2023 WL 7921093 *5 (E.D. Okla. Nov. 15, 2023).  Dkt. No. 44 at 7.  Consistent with that ruling, the Government agrees that

it will not refer to K.H. as the "victim" until its closing argument.  Dkt. No. 47 at 11.  However, the Government objects to precluding K.H. from "referring to herself as a victim if she chooses to do so of her own accord" while testifying at trial.  *Id*.  The Government argues that this type of limitation would stifle K.H.'s ability to testify freely in her own words and may ultimately impact her credibility with the jury.  *Id*. at 12.

As recognized, this Court has previously precluded the use of the term "victim" at trial, except for during closing argument, and directed the Government *and its witnesses* to refrain from using the term otherwise.  *United States v. McGirt*, 2023 WL 7921093 *5 (E.D. Okla. Nov. 15, 2023).  Likewise, the Court finds here that the Government may not use the term "victim" when referring to K.H. during its presentation of evidence, but may do so during its closing argument as the Government will also likely argue that it has met its burden to establish Defendant's guilt.  The Court further finds that witnesses should also refrain from referring to K.H. as the victim, including K.H. herself.  The Court disagrees with the Government that limiting K.H.'s ability to refer to herself as the "victim" would impede her ability to accurately and effectively testify in this case.[2] "Victim" is merely a label and is not necessary to K.H.'s recitation of what occurred at the time of the charged conduct.  Accordingly, the Court directs the Government and its witnesses, including K.H., to refrain from using the term "victim," except for closing arguments.  For these reasons, Defendant's motion in limine is granted as to this issue.

---

[2]  The Court notes that the Government cited to two cases in support of its argument regarding K.H.'s ability to refer to herself as a "victim."  Dkt. No. 47 at 12.  However, the Government did not include Westlaw citations, nor did the Government attach copies of the cases to its filings. The Court reminds the parties that pursuant to this Court's Chamber Rules, "[t]he parties are expected to cite to unpublished cases using the Westlaw citation" and, "[i]f a Westlaw citation is not available, the unpublished case shall be attached to the filing."  *See* Judge Heil – Chamber Rules, § 2(a), https://www.oked.uscourts.gov/sites/oked/files/OKED%20Chambers%20Rules.pdf.

III.     **Government's Consolidated Motions in Limine [Dkt. No. 45]**[3]

    a.   *K.H.'s statements to J.G., J.H., P.H., and E.H.*

        i.   *Excited utterance.*

The Government seeks the admission of statements K.H. made shortly following the alleged sexual assault to her then-boyfriend, J.G., and her mother and older sister, J.H. and P.H. Dkt. No. 45 at 11.  The Government argues that these statements fall within the excited utterance exception to the rule against hearsay pursuant to Federal Rule of Evidence 801(d)(1)(B).  *Id*. at 12. Defendant objects, arguing that evidence of K.H.'s statements would be cumulative and unfairly prejudicial in that it would allow K.H.'s recitation of the events to be presented to the jury multiple times.  Dkt. No. 51 at 4-5.  Defendant further argues that because hearsay determinations are "particularly fact and case specific," the Court should reserve its ruling for trial.  *Id*. at 6 (citing *United States v. Lovato*, 950 F.3d 1337, 1341 (10th Cir. 2020)).

Hearsay is an out of court statement offered to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).  Generally, hearsay evidence is not admissible.  Fed. R. Evid. 802.  However, there are exceptions to the rule against hearsay.  Fed. R. Evid. 803.  One such exception allows admission of an "excited utterance," which is "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).  "The basis for the excited utterance exception . . . is that such statements are given under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and that therefore the circumstances surrounding the making of the statement provide sufficient

---

[3] The Court notes that while motions in limine typically seek the *exclusion* of specific evidence or arguments from being presented at trial, the Government's motion actually seeks the *admission* of certain evidence or arguments at trial.  Regardless of the title of the Government's Motion, the Court will address each of the Government's arguments in turn.

assurance that the statement is trustworthy and that cross-examination would be superfluous." *Idaho v. Wright*, 497 U.S. 805, 820 (1990).

The "excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the event." *United States v. Smith*, 606 F.3d 1270, 1279 (10th Cir. 2010).   Admissibility as an excited utterance "hinges on a statement's contemporaneousness with the excitement a startling event causes, not the event itself" and, therefore, "there is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance." *Id.* (internal citations and quotations omitted).   Courts consider a range of factors in determining whether a declarant made a statement while under the stress of a particular event, including:

1.   The amount of time between the event and the statement;
2.   The nature of the event;
3.   The subject matter of the statement;
4.   The age and condition of the declarant;
5.   The presence or absence of self-interest; and
6.   Whether the statement was volunteered or in response to questioning.

*United States v. Pursley*, 577 F.3d 1204, 1220-21 (10th Cir. 2009).  Here, the factors weigh heavily toward admission.

First, a startling event occurred.   The Tenth Circuit has found that sexual assault is a startling event for purposes of the excited utterance exception.  *Smith*, 606 F.3d at 1279.  Next, there is little doubt that K.H. was under the stress of the event's excitement at the time she made statements regarding the sexual assault to J.G., J.H., and P.H.   K.H. told J.G. about the sexual assault when she returned to J.G.'s vehicle a matter of minutes after the alleged sexual assault occurred.   K.H. called her mother, J.H., and told both J.H. and P.H. about the assault within fifteen (15) minutes of the alleged sexual assault.   Other courts have found the excited utterance exception

applies where more time elapsed between the startling event and the excited utterance.  *Id.* (collecting cases).

There is also a clear nexus between the content of the statements and the event.  K.H.'s statements described the event.  Additionally, it would appear that K.H. was in distress while making the statements.  J.G., J.H., and P.H. all describe K.H. as "hysterical," screaming and crying while making the statements.  There is also no indication that K.H. made the statements in self-interest, but instead made the statements as a direct result of the stress of the alleged sexual assault. For these reasons, the Court finds that K.H.'s statements regarding the alleged sexual assault made to J.G., J.H., and P.H. shortly following the alleged sexual assault may be admissible under the excited utterance exception to the rule against hearsay, pursuant to Fed. R. Evid. 803(2).  However, it will be up to the Government to lay the proper foundation at trial.

The Court is not likely to find that allowing testimony from J.G., J.H., and P.H. regarding K.H.'s excited utterances would be cumulative or unduly prejudicial.  The Tenth Circuit has defined cumulative evidence as "evidence which goes to prove what has already been established by other evidence."  *United States v. Otuonye*, 995 F.3d 1191, 1208 (10th Cir. 2021).  The Tenth Circuit has suggested that, if the witnesses' testimonies are not "a total repeat" of each other, and the witnesses provide more detail or discuss topics not raised by the other, the testimony is not cumulative.  *See United States v. Archuleta*, 737 F.3d 1287, 1292-93 (10th Cir. 2013).  J.G., J.H., and P.H.'s testimony is not "a total repeat" of each other because J.G., J.H., and P.H. each had separate conversations and interactions with K.H. shortly following the alleged sexual assault. Accordingly, the probative value of the evidence is not substantially outweighed by the dangers of wasting time or needlessly presenting cumulative evidence.  However, the Court is mindful that there is at least some potential for this testimony to become cumulative and, therefore, the

Government is cautioned to make effort to minimize such cumulative testimony during trial. For these reasons, the Government's motion in limine is granted as to this issue. The Court reserves ruling on any excited utterance exception to the hearsay rule until trial.

ii. *Prior consistent statement.*

The Government also argues that K.H.'s statements to J.G., J.H., and P.H., along with statements made to her twin sister, E.H., and state and federal law enforcement officers, are admissible as prior consistent statements pursuant to Fed. R. Evid. 801(d)(1)(B), should the defense imply that K.H.'s testimony regarding the alleged sexual assault is fabricated, or otherwise influenced or motivated in some way. Dkt. No. 45 at 14. Defendant's response does not indicate whether or not he intends to suggest that K.H. fabricated the sexual assault or is otherwise influenced or motivated to give false testimony at trial. *See* Dkt. No. 51.

"A statement is not hearsay if the declarant testifies and is subject to cross-examination about a prior statement when the statement 'is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.'" *United States v. Smalls*, 752 F.3d 1227, 1241 (10th Cir. 2014) (quoting Fed. R. Evid. 801(d)(1)(B) and citing *Tome v. United States*, 513 U.S. 150, 167 (1995) ("The Rule permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive.")). Prior consistent statements "are admitted as substantive evidence, not just to rebut an attack on the witness's credibility." *Id.* at 1241.

The Court agrees that if K.H. testifies at trial and the defense expressly or impliedly suggests that K.H.'s testimony is fabricated or improperly influenced or motivated in some way,

the Government may offer prior consistent statements that are consistent with K.H.'s challenged in-court testimony, pursuant to Fed. R. Evid. 801(d)(1)(B).   However, the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.   For the reasons discussed above, the Court finds that K.H.'s statements to J.G., J.H., and P.H.—which were made within minutes of the alleged sexual assault—were made prior to the time where any supposed motive to falsify could have arisen.   Therefore, if the circumstances arose at trial, the Court finds that K.H.'s statements to J.G., J.H. and P.H. would be admissible as prior consistent statements under Fed. R. Evid. 801(d)(1)(B).   However, because Defendant has not indicated whether he intends to suggest that K.H.'s trial testimony is fabricated—and, if so, what motive K.H. has for fabricating her testimony or when such motive would have arisen—the Court cannot determine whether K.H.'s statements made to her twin sister, E.H., and state and federal law enforcement officers are admissible under Fed. R. Evid. 801(d)(1)(B).   Accordingly, the Court instructs the Government to alert the Court outside the presence of jury if it believes Defendant has opened the door to allow the admission of K.H.'s prior consistent statements so that the Court may fully address the issue pursuant to Fed. R. Evid. 801(d)(1)(B).   The Government's motion in limine is granted in part and the Court's ruling is reserved in part as to this issue as set forth above.

       b.   *Evidence of K.H.'s other sexual behavior.*

The Government seeks to preclude evidence, questioning, or reference to K.H.'s other sexual behavior or predisposition, including her work as a dancer at a club in Tulsa, Oklahoma. Dkt. No. 45 at 15.   The Government argues that this evidence is irrelevant, does not fall within the scope of evidence permitted under Fed. R. Evid. 412, and the probative value, if any, would be outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.   *Id*. at 15-19.   Defendant argues that because Defendant asked K.H. about her work as a dancer shortly

before the alleged sexual assault occurred, and because the Government concedes that the defense may cross-examine K.H. regarding the substance of her conversation with Defendant, the Government cannot ask the Court to limit other evidence or questioning related to K.H.'s work as a dancer.  Dkt. No. 51 at 6-7.

Federal Rule of Evidence 412 allows evidence of a victim's sexual behavior or sexual predisposition to be presented under very limited circumstances.  *See United States v. A.S.*, 939 F.3d 1063, 1072 n.4 (10th Cir. 2019) (quoting Fed. R. Evid. 412).  Specifically, the rule allows "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor." Fed. R. Evid. 412(b)(1)(B).  Because it is not alleged that Defendant and K.H. had any sexual contact prior to the alleged sexual assault, Fed. R. Evid. 412 does not apply and evidence of K.H.'s sexual behavior or predisposition is not admissible.  The Court finds that this extends to evidence related to K.H.'s work as a dancer.  There is a distinct difference between questioning regarding the conversation Defendant and K.H. had about her work as a dancer, and questioning regarding K.H.'s work as a dancer outside the context of that conversation.  The Court is confident that the parties can appreciate and understand this difference.  For these reasons, the Government's motion in limine is granted as to this issue.

c. *Evidence of K.H.'s victimization in unrelated criminal incidents.*

K.H. was victim to two unrelated criminal incidents subsequent to the alleged sexual assault at issue here.  Dkt. No. 45 at 19-21.  The Government seeks to preclude evidence of these incidents at trial.  *Id*.  Defendant states that he does not intend to introduce evidence of these incidents, other than evidence of K.H.'s drug use in September 2023, which was revealed during an investigation into one of the incidents.  Dkt. No. 51 at 9.  The Court will more fully consider

evidence regarding K.H.'s drug use below.  However, specifically related to evidence of K.H.'s victimization in the two unrelated criminal incidents subsequent to the alleged sexual assault at issue here, the Government's motion is denied as moot because Defendant does not intend to introduce this evidence.  Should Defendant seek to mention any such incidents, he must first raise the issue with the Court outside the presence of the jury.

        d.   *Evidence of Defendant's good character.*

The Government seeks to preclude Defendant from introducing evidence of his "good character" at trial.  Dkt. No. 45 at 22.  Specifically, the Government asks the Court to prohibit evidence of specific instances of Defendant's good conduct related to his job as a police officer or otherwise.  *Id*.  To the extent Defendant opens the door as to his good character, the Government asks the Court to allow it to impeach Defendant with evidence that Defendant previously stalked and harassed an 18-year-old woman, K.L., while working as a reserve police officer for the Haileyville Police Department.  *Id*. at 25.  Defendant does not indicate whether he intends to introduce evidence of his good character at trial, but rather argues that the Court should reserve all rulings regarding character evidence until trial.  Dkt. No. 51 at 9-10.  Regarding the Government's notice of other act evidence should Defendant open the door to his character, Defendant states that such evidence is irrelevant and an attempt to "intimidate the defense."  *Id*. at 10.

The Federal Rules of Evidence specifically provide that at trial a defendant may adduce "evidence of a pertinent trait of character."  *United States v. Yarbrough*, 527 F.3d 1092, 1101 (10th Cir. 2008) (quoting Fed. R. Evid. 404(a)(1)).  "[P]roof [of character] may be made by testimony as to reputation or by testimony in the form of an opinion."  *Id*. (citing Fed. R. Evid. 405(a)).  "Taken together, these rules make clear that although propensity evidence is generally not allowed, 'when . . . the defendant in a criminal case seeks to offer evidence of his good character to imply

that he is unlikely to have committed a crime, the general rule against propensity evidence is not applied.'" *Id*. (quoting 1 McCormick on Evidence § 191 (Kenneth S. Broun, ed., 6th ed.2006)). However, under Fed. R. Evid. 405(b), a defendant may only present evidence of specific instances of conduct "in cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense." *United States v. McMahan*, 394 F.App'x 453, 463 (10th Cir. 2010) (citing Fed. R. Evid. 405(b) and *United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir. 1992)).

Here, Defendant's character or a trait of character is not an essential element of the charged crimes and, therefore, specific instances of conduct, such as previous actions in conformity with the law, examples of compliance with SPD polices or training, or specific acts of helpfulness or kindness, are not admissible. Defendant may, however, introduce evidence, in the form of testimony as to his reputation or testimony in the form of an opinion as to his good character. In cases where the defense is lack of willful intent—as it expected to be here—the character of the defendant is often relevant. *Yarbrough*, 527 F.3d at 1102.

Should Defendant make character an issue at trial, the Government may cross-examine or introduce evidence to rebut evidence of Defendant's good character. But such introduction of evidence is limited. *See United States v. Gilliland*, 586 F.2d 1384, 1389 (10th Cir. 1978) (citing Fed. R. Evid. 404(a)(1), 405(a)) ("If the defendant utilizes a character witness then the government may cross-examine or introduce evidence of prior convictions to rebut the defense evidence of good character."); *United States v. McHorse*, 179 F.3d 889, 901-902 (10th Cir. 1999) (citing John W. Strong, McCormick on Evidence, § 191, at 816 (1992) ("The prosecution may cross-examine a witness who has testified to the accused's reputation in order to probe the witness's knowledge . . . specifically as to whether the witness 'has heard' that the defendant has committed particular prior criminal acts that conflict with the reputation vouched for . . . . Likewise, if a witness gives

his opinion of defendant's character, then the prosecution can allude to pertinent bad acts by asking whether the witness knew of these matters in forming his opinion.")).  Because the scope of rebuttal is limited depending upon the context of the "good character" evidence, the Court reserves a ruling as to the issue of rebuttal evidence for trial.  Should the Government believe Defendant has opened the door, it is instructed to inform the Court, outside the presence of the jury, so that the Court may properly address this issue at that time.  Therefore, the Government's motion in limine is granted in part and denied in part as to this issue as set forth above.

  e. *Jury nullification.*

   i. *Argument concerning Defendant's potential punishment.*

The Government seeks to preclude argument regarding Defendant's potential punishment if found guilty.  Dkt. No. 45 at 27.  Defendant states that he does not intend to make such argument. Dkt. No. 51 at 10-11.  Further, at every trial, the Court instructs the jury that it is not to consider the possible punishment of a defendant when deciding its verdict.  *See* Tenth Circuit Pattern Criminal Jury Instruction No. 1.20.  For these reasons, Defendant's motion in limine is denied as moot as to this issue.

   ii. *Evidence concerning K.H. and J.G.'s drug use.*

The Government seeks to preclude evidence concerning K.H. and J.G.'s drug use at times prior to or after the charged conduct.  Dkt. No. 45 at 28.  Specifically, during an FBI interview, K.H. stated that both she and J.G. had smoked marijuana in the past.  *Id*.  Additionally, during an investigation into to an unrelated criminal incident in which K.H. was a victim in September 2023, K.H. admitted that she had cocaine on her at the time of that incident and that she had used earlier that day.  *Id*.  While there is evidence that Defendant found a pre-rolled marijuana cigarette in

K.H.'s purse prior to the alleged sexual assault, the Court is unaware of any evidence that would indicate that either K.H. or J.G. were under the influence of any substance at that time.

Defendant is silent regarding his intention to introduce evidence regarding J.G.'s drug use, but he does indicate that he intends to introduce evidence regarding K.H.'s cocaine use in September 2023 and asks the Court to instruct the jury pursuant to Tenth Circuit Pattern Criminal Jury Instruction No. 1.16 – "Witness's Use of Addictive Drugs." Dkt. No. 51 at 8. This instruction cautions the jury about weighing the testimony of a "drug abuser." Tenth Circuit Pattern Criminal Jury Instruction No. 1.16. Defendant argues that this instruction is appropriate because the jury will have heard about the pre-rolled marijuana cigarette in K.H.'s purse on the day of the alleged sexual assault and will "know that K.H. is a person who casually carries drugs on her person." Dkt. No. 51 at 9. That, coupled with K.H.'s admitted cocaine use in September 2023, "bears directly on her credibility, which will be the focus of trial." *Id*. The Government's reply brief argues that a witness' drug use is not admissible as impeachment evidence and that Defendant's proposed jury instruction is not warranted under the facts presented in this case. Dkt. No. 54.

Regarding Defendant's requested jury instruction, pursuant to the Court's scheduling order, the parties may submit their proposed jury instructions by February 23, 2024. Dkt. No. 41. During trial, the Court will determine what instructions to give to the jury. While the Court has its doubts that Tenth Circuit Pattern Criminal Jury Instruction No. 1.16 is appropriate in this case, the Court reserves its decision regarding all jury instructions until trial.

Regarding evidence of K.H.'s admitted drug use in September 2023, the Court finds that it is not admissible. First, the evidence is not relevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid.

401. The fact that K.H. used cocaine in September 2023, nearly eleven months after the alleged sexual assault, does not have the tendency to make any fact at issue in the trial more or less probable than it would be without the evidence.

This evidence is also not admissible as character evidence. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Evidence of other crimes, wrongs, or acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Likewise, this evidence is not admissible for purposes of impeachment. "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." *United States v. Beltran–Garcia*, 338 F. App'x 765, 770 (10th Cir.2009) (unpublished). "While drug use may be used to attack a witness's ability to perceive the underlying events and testify lucidly at trial, it may not be used to attack general credibility." *United States v. Peet*, 46 F.3d 1152, 1995 WL 21614, at *3 (10th Cir. 1995). Evidence of K.H.'s drug use in September 2023 would not have any effect on K.H.'s ability to perceive the underlying events that took place in November 2022, nor to testify lucidly at trial in March 2024. Therefore, evidence of K.H.'s September 2023 drug use may not be introduced as character evidence, nor used generally to attack her credibility.

For these reasons, the Court also finds that evidence of K.H. and J.G.'s drug use, prior or subsequent to the charged conduct is inadmissible. However, K.H. and J.G. may be questioned whether they were under the influence of any substance at the time of the charged conduct and whether they are currently under the influence of any substance at the time of giving testimony at

19

trial for the limited purpose of attacking their ability to perceive the charged conduct and testify lucidly at trial as discussed above.  Accordingly, the Government's motion in limine is granted in part and denied in part as to this issue as set forth herein.

### iii.  *Use of inflammatory language regarding K.H.*

The Government seeks to preclude Defendant from referring to K.H. as a "stripper," "prostitute," or someone who "prostitutes" or "sells" her body.  Dkt. No. 45 at 31-33.  In line with its earlier ruling limiting questions related to K.H.'s work as a dancer, the defense shall not refer to K.H. as a "stripper," "prostitute," or someone who "prostitutes" or "sells" her body.  The Court finds that there is no probative value in the use of these terms and, even if there were, it would be outweighed by the prejudicial effect.  The Court agrees with the Government that referring to K.H.'s job title as a "dancer" appears accurate and appropriate.  However, consistent with the Court's ruling above, if K.H. was referred to as a "stripper," "prostitute," or someone who "prostitutes" or "sells" her body within the context of her conversation with Defendant just prior to the alleged sexual assault, this may be elicited on direct or cross-examination, but only within the context of that conversation.  Accordingly, the Government's motion in limine as to this issue is granted.

### f.  *J.G.'s criminal history.*

The Government seeks to preclude Defendant from improperly impeaching J.G. with his criminal history.  Dkt. No. 45 at 33.  J.G.'s criminal history includes:

- First Degree Burglary, Juvenile Adjudication, Fort Bend, TX, 2016;
- Unlawful Carrying of a Weapon, Class A Misdemeanor Conviction, Fort Bend, TX, 2023;
- Discharge of a Firearm in Certain Municipalities, Class A Misdemeanor Conviction, Fort Bend, TX, 2023;
- Reckless Driving, Class B Misdemeanor Conviction, Fort Bend, TX, 2023;
- Criminal Mischief, Felony Conviction, Fort Bend, TX, 2023;

- Domestic Assault and Battery with a Dangerous Weapon, Charges Pending, Tulsa, OK 2023.

*Id.* at 33-34.  The Government concedes that J.G.'s 2023 Criminal Mischief felony conviction may be used to impeach J.G. but argues that all other criminal incidents are foreclosed under Fed. R. Evid. 609.  *Id.* at 34.  Defendant states that he does not intend to improperly impeach J.G. as argued by the Government in this section.  Dkt. No. 51 at 11.  Therefore, the Government's motion in limine is denied as moot as to this issue.

g.   *Defendant's out-of-court statements.*

The Government seeks to preclude Defendant from offering his own out-of-court statements at trial.  Dkt. No. 45 at 37.  Specifically, Defendant made statements to Porum Police Department Police Chief Jack Denny, Quinton Police Department Police Chief Kevin Kirk, and Quinton City Councilperson Dawn Haviland, as well as his family and friends, regarding the reason for his termination from SPD.  *Id.* at 38.  The Government argues that these statements are precluded by Fed. R. Evid. 801.  *Id.*  Defendant agrees that he may not call witnesses to testify solely about what Defendant told them.  Dkt. No. 51 at 11.  Therefore, the Government's motion in limine is denied as moot as to this issue.

h.   *Reference to failure to call witnesses.*

The Government seeks to preclude Defendant from referring to, or making argument about, the Government's failure to call any witness who is equally available to both parties.  Dkt. No. 45 at 39.  Defendant asks the Court to reserve its ruling for trial as the parties' witness lists have not yet been exchanged and witness availability has not yet been determined.  Dkt. No. 51 at 12.  The Court agrees with Defendant that this issue is not ripe and will reserve any ruling for trial.  The Court instructs the parties to bring it to the Court's attention, outside the presence of the jury, should this issue arise at trial so that the Court may properly address this issue at this time.

## CONCLUSION

IT IS THEREFORE ORDERED that:

- Defendant's Omnibus Motion in Limine [Dkt. No. 44] is GRANTED IN PART AND DENIED IN PART as set forth in this Order.

- The Government's Consolidated Motions in Limine [Dkt. No. 45] is GRANTED IN PART AND DENIED IN PART as set forth in this Order.

DATED this 21st day of February 2024.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE